UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PACIFIC-OCEAN AUTO PARTS
CO., d/b/a PAPCO,

               Plaintiff,

                                 Case No.  21-12516

    vs.                         HON.  GEORGE CARAM STEEH

GENERAL MOTORS CO.,

               Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (ECF No. 18)

      This case arises out of a contractual relationship between plaintiff Pacific-Ocean Auto Parts Company (PAPCO) and defendant General Motors Company (GM). PAPCO alleges that GM breached the parties' Accessories Distributor Installer Agreement (ADI Agreement or Agreement) by terminating the Agreement in retaliation over a human resources complaint made against a GM executive which alleged gender discrimination. Count One asserts breach of contract and Count Two alleges violations of California's Unruh Act, Cal. Civil Code § 51.5, which prohibits discrimination against businesses. The matter is before the Court on defendant's motion to dismiss for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Upon a careful review of the

written submissions, the Court deems it appropriate to render its decision

without a hearing pursuant to Local Rule 7.1(f)(2).  For the reasons set

forth below, defendant's motion to dismiss is GRANTED.

<u>FACTUAL ALLEGATIONS</u>

PAPCO is a California corporation that distributes auto parts and

accessories for car dealerships. Since 2015, PAPCO was owned 80% by

Peter Frank and 20% by Stacey Duff. Duff managed the company on a

day-to-day basis. PAPCO entered into its first ADI Agreement with GM in

2004, becoming an authorized distributor for GM auto parts and

accessories. PAPCO's sales territory covered the San Francisco and

Sacramento regions. The ADI Agreement required PAPCO to make a

substantial capital investment, including acquiring warehouse facilities,

maintaining a minimum number of sales and service personnel, acquiring a

fleet of GM delivery vehicles, and utilizing a computerized accounting and

inventory system that GM could access. See ADI Agreement, §§ 4 and 5.

The ADI Agreement was for a term of five years and had to be renewed

thereafter. On October 31, 2015, PAPCO entered into a new ADI

Agreement with GM, effective January 1, 2016 through December 31,

2020. This Agreement governs the parties' dispute.

Among the 25 ADIs who contracted with GM, PAPCO consistently ranked among the middle of the pack as to overall sales performance. In 2016, PAPCO ranked first for highest year over year (YOY) growth, and in 2017 it ranked second in YOY growth. In 2018, PAPCO asked GM for help in increasing its sales. GM approved PAPCO to work with Marty Smith, a member of GM's Operation Excellence Team. Smith made several recommendations that PAPCO adopted, including selling exclusively for GM and implementing new protocols for its sales team. By early 2019, PAPCO's entire sales force had resigned because they did not like the new protocols. PAPCO set out to recruit a new sales force but had difficulty hiring due to the strict criteria designed by Smith.

Article 5.4.3 of the ADI Agreement set forth the guidelines for sales objectives. Accessories and performance parts sales objectives were based on the number of cars the dealers were expected to sell. According to PAPCO, in 2018, GM unilaterally changed the way sales objectives were determined and set them "at whatever number it saw fit to meet GM's newly set goal to gross $1 billion in accessory sales nationwide." FAC ¶ 20. Sales objectives were important because if an ADI did not meet the minimum ADI Sales Index score of 85 for two consecutive quarters, then the ADI Agreement required GM to review the ADI for placement on a one-

year Process Improvement Program ("PIP"). ADI Agreement ¶ 6.6. If the ADI did not improve on the PIP, GM had the option to terminate the ADI Agreement for breach and had to give written notice of the failure and 60 days to correct the failure, pursuant to Article 11.3. ADI Agreement ¶ 6.7.

According to PAPCO, GM's ADI Network Manager, Chris Baron, displayed discriminatory animus toward PAPCO co-owner and manager Stacey Duff, because she was a woman in an industry dominated by men. As evidence of discrimination, PAPCO describes that Baron refused to acknowledge Duff during ADI meetings and would not cooperate or communicate with her, though he acknowledged and worked well with the male ADI mangers. FAC ¶¶ 25-26. In July of 2018, Duff complained to Smith about Baron's negative and hostile interactions with her. Smith took it upon himself to file a Human Resources complaint (HR Complaint) against Baron for being in violation of GM's professional conduct policy. FAC ¶ 29. After the HR Complaint was filed, Baron's supervisor, ADI Director Chris Maciag, called Duff and told her Baron "needed to work on his bedside manner." FAC ¶ 30. No further action was taken by GM.

In January 2019, following Maciag's retirement, Baron was promoted to ADI Director. PAPCO contends that Baron made it his mission to get rid

of Duff because she was a woman and because he held Duff responsible for the HR Complaint filed against him. FAC ¶ 31.

On January 31, 2019, Baron initiated discussions with PAPCO regarding its alleged underperformance. Although PAPCO hit 89% of its sales objectives in 2018, the number slipped to 79% in the beginning of 2019. FAC ¶ 34. PAPCO provides the sales objective figures for all the ADIs, demonstrating that PAPCO was the only ADI eventually terminated even though several others performed below 85% for the first two quarters of 2019. FAC ¶ 35-36. PAPCO also points out that it had a good reason for its decline in sales, being that it was in the process of revamping its entire sales force under the direction of Smith.

On April 3, 2019, Baron informed Duff he was exercising Article 11.3 of the ADI Agreement for material breach. Baron gave PAPCO a list of seven items they had to put in place by May 17 to avoid termination. These items included that PAPCO become fully staffed and increase second quarter sales to 95% of sales objectives. FAC ¶41. PAPCO maintains that it was unreasonable for Baron to expect PAPCO to achieve these goals due to the short timeframe and the fact that PAPCO was restructuring under Smith's directions at the same time. PAPCO also points out that GM did not require the other ADIs to meet 95% of their sales objectives, and

that 85% of the ADIs across the network were hitting substantially less than 95% of their sales objectives. FAC ¶ 42.

Nevertheless, PAPCO worked to meet each of Baron's demands and made great progress in the time provided. However, it fell short of meeting all of the requirements. PAPCO met 79% of its sales objective for the second quarter, even without a sales team in place. PAPCO contends if it had more time it could have met each of the demands. For example, in July 2019, PAPCO met 103% of its sale objectives and had hired 2 of the 4 sales team members Baron required. However, Baron refused to give PAPCO additional time. FAC ¶ 44. In addition, Baron refused to review PAPCO for a PIP, which also would have given it more time to implement Smith's plan and improve performance. FAC ¶ 47.

On May 17, 2019, Baron told Duff he was terminating the ADI Agreement under Article 11.3 for material breach – specifically that PAPCO was not hitting sales objectives, had no sales team, its inventory manager was causing strife and a check to GM bounced in 2018 when PAPCO changed banks. FAC ¶ 49. Baron gave PAPCO 60 days to sell the company or he would terminate the Agreement. Frank asked Baron for more time to sell the business, and Baron agreed. FAC ¶ 51.

When Duff first became involved as a partial owner and manager of PAPCO in 2015, she intended to eventually purchase the business. In response to the present situation, she created a plan to present to GM whereby she would purchase PAPCO with a new partner and continue to work with Smith to increase sales numbers. On July 2, 2019, Duff had a call with Baron and others from GM where she shared her plan to submit a proposal to buy PAPCO with a new partner. During the call, Baron refused Duff's proposal and said it would be futile for Duff to apply because he would not review, consider, or approve her application or the sale under any circumstances. FAC ¶ 53. Although the ADI Agreement required a written application to change ownership and disclosure of the new owner's identity, § 9.1.1 and 9.1.2, Duff did not do so because she thought it would be futile. Instead, PAPCO was forced to sell its assets to a third-party buyer, for much less than they were worth. PAPCO blames its losses on GM's failure to act in good faith, and being forced to sell quickly and during a strike at GM.

PAPCO commenced this lawsuit on October 26, 2021. PAPCO avers that it suffered a loss of at least $5,000.000. FAC ¶ 57.

STANDARD OF REVIEW

Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007), the Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" are insufficient to "state a claim to relief that is plausible on its face". *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557, 570). To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555) (other citations omitted). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046, 1051 (6th Cir. 2011) (*citing Twombly*, 550 U.S. at 555).

When considering a Rule 12(b)(6) motion, the court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

<u>LAW AND ANALYSIS</u>

I.   <u>Breach of Contract</u>

The ADI Agreement provides that the laws of Michigan govern the parties' agreement. ADI Agreement, Article 13.10. The elements of a cause of action for breach of contract are "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach*." Bank of America, N.A. v. First American Title Insurance Co.*, 499 Mich. 74, 100 (2016). GM argues that PAPCO's breach of contract claim must be dismissed because the damages sought are barred by the Agreement, PAPCO lacks standing to assert damages that were suffered by non-party Duff, and PAPCO did not comply with the required conditions precedent.

A. <u>Damages</u>

PAPCO alleges that it suffered damages due to GM's various material breaches of the ADI Agreement, including express contract terms and others based on the implied covenant of good faith and fair dealing. Due to GM's wrongful termination of the ADI Agreement, PAPCO contends it was forced to make an emergency sale of its assets during a strike and can recover its losses from GM as foreseeable benefit-of-the-bargain damages. PAPCO describes its damages in the FAC as follows:

> 57.  Because GM denied Duff's request to purchase PAPCO, Duff and Frank were forced to sell PAPCO's assets to a third party buyer to prevent a total loss from GM's terminating PAPCO's 2015 Contract (given that PAPCO had consolidated its business to only sell for GM per Smith's recommendations). Not only were Duff and Frank forced to sell prematurely before maximizing the company's value, they were forced to sell during a time that GM was experiencing a strike. As a result of the strike, PAPCO was forced to sell its assets at a significantly lower value than what they were worth, which resulted in a loss to PAPCO totaling at least $5,000,000.

GM responds that the contract damages sought by PAPCO are barred by Articles 13.1.7 and 12.4.2(g) of the ADI Agreement. Article 13.1.7 addresses damages that are not recoverable, including consequential damages:

> In no event will either party be liable to the other for punitive, special, incidental, or consequential damages, losses, or expenses, including, but not limited to, lost profits or business opportunity.

"In an action based on contract, the parties are entitled to the benefit of the bargain as set forth in the agreement. The proper measure of damages for a breach of contract is 'the pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached." *ChiRhoClin, Inc. v. Grand River Aseptic Mfg., Inc.*, No. 1:17-CV-993, 2022 WL 1715201, at *3 (W.D. Mich. Mar. 14, 2022) (citing *Ferguson v. Pioneer State Mut. Ins. Co.*, 731 N.W.2d 94, 99 (Mich. Ct. App. 2006)). Under Michigan law, "a party asserting a breach of contract claim may recover damages that are 'the direct, natural, and proximate result of the breach.'" *Id*. (citing *TSP Servs., Inc. v. Nat'l-Standard, LLC*, 944 N.W.2d 148, 151 (Mich. Ct. App. 2019)).

The terms of the ADI Agreement do not allow recovery of consequential damages. Consequential damages are those damages that "stem from losses incurred by the nonbreaching party in its dealings, often with third parties, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting" *S. C. Gray, Inc. v. Ford Motor Co.*, 92 Mich. App. 789, 812 (1979) (citation omitted). The parties disagree whether the lost profits sought by PAPCO are considered consequential damages or direct benefit-of-the-bargain damages.

There are no allegations in this case that it was foreseeable at the time the parties entered into the ADI Agreement that a termination of the agreement would force PAPCO to make an emergency sale of its assets, let alone that GM would be experiencing a strike. In addition, the ADI Agreement, at Article 13.1.7, expressly defines the type of damages that are not recoverable to include lost profits. Therefore, any loss incurred by PAPCO when it sold its business, even if it was forced to do so due to a breach by GM and under adverse market conditions, are barred by the express terms of the parties' agreement.

GM also relies on Article 12.4.2(g) as a bar to damages due to "loss of prospective profits or on account of any expenditure, investment or obligation incurred or made by ADI."  Article 12.4.2(g) provides:

> The termination of this Agreement by either party or the expiration of this Agreement by its terms shall not entitle ADI to any termination or severance compensation or to any payment in respect to any goodwill established by ADI during the term of this Agreement or render GM ACCESSORIES liable for damages on account of the loss of prospective profits or on account of any expenditure, investment or obligation incurred or made by ADI.

PAPCO did not directly address GM's argument in its response, therefore, to the extent this Article is relevant, PAPCO has waived its opposition.

*Schull v. CitiMortgage, Inc.*, No. 11-15643, 2012 U.S. Dist. LEXIS 140549,

at * 11-12 (E.D. Mich. Sept. 28, 2012) ("A party waives opposition to a motion if the party fails to respond to arguments raised in the motion").

B. <u>Other Arguments</u>

Having concluded that the contract damages alleged by PAPCO are not recoverable under the terms of the ADI Agreement, the Court need not address GM's other damages arguments. This includes the arguments that PAPCO lacks standing to seek damages for alleged harm to non-party Duff and that PAPCO failed to satisfy conditions precedent under the Agreement prior to raising a claim for damages related to Duff seeking to increase her ownership in PAPCO. So too, whether the implied covenant of good faith and fair dealing applies to any contract terms need not be addressed because PAPCO's contract claim fails on the element of damages.

Defendant's motion to dismiss is granted as to plaintiff's breach of contract claim.

II.   <u>California Unruh Act</u>

In Count II, PAPCO asserts a claim for gender discrimination under California's Unruh Act. California Civil Code § 51. Federal courts sitting in diversity look to the law of the forum state when making a choice-of-law determination. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496

(1941). Michigan adheres to the Restatement (Second) of Conflict of Laws. *Chrysler Corp. v. Skyline Indust. Svcs., Inc.*, 448 Mich. 113, 124-25 (1995). Under Restatement (Second) § 187, the law of the state specified in the choice-of-law clause governs unless application of the law of the chosen state would be contrary to a fundamental policy of a state with a materially greater interest than the chosen state in the determination of the particular issue. Under § 188, the state with a materially greater interest would be the state of the applicable law in the absence of an effective choice of law by the parties.

The ADI Agreement specifies that Michigan law governs. ADI Agreement, Article 13.10. To set aside the agreement of the parties and apply California law, the Court has to find that there is no reasonable basis for the selection of Michigan law, or that California has a greater interest in protecting its companies from discrimination and applying Michigan law in this instance would violate a fundamental policy of California.

In this case we have a plaintiff from California and a defendant from Michigan. The contract was to be performed in California, which is where PAPCO's ADI territory was located. However, because GM has ADI Agreements with many ADIs, located in different states, there is a reasonable basis for choosing Michigan law to ensure GM will have

- 14 -

certainty in defending its rights in lawsuits with its ADIs throughout the country. *See e.g., Lowry Comput. Prods. v. Head*, 984 F. Supp. 1111, 1114 (E.D. Mich. 1997).

PAPCO argues that California has a materially greater interest in ensuring that its businesses are not harmed by gender discrimination. While California's statute is more protective than Michigan law, in that it protects businesses and not just individuals, it cannot reasonably be said that California's interest in battling discrimination is greater than Michigan's. Furthermore, Michigan's Elliott-Larsen Civil Rights Act, which prohibits discrimination against individuals, MCL 37.2202, does not violate California policy. California's policy simply goes further in that § 51.5(b) defines a "person" as, *inter alia*, any "firm… partnership, business trust, [or] corporation…."

Even if the Court finds that California law should apply to PAPCO's discrimination claim, the Unruh Act claim is subject to a two-year statute of limitations. *See Estate of Stern v. Tuscan Retreat, Inc.*, 725 F. App'x 518, 525 (9th Cir. 2018); *Doe v. Pasadena Hosp. Ass'n, Ltd.*, No. 2:18-CV-9648, 2020 U.S. Dist. LEXIS 56496, at *8 n.2 (C.D. Cal. Mar. 31, 2020). "[A]n Unruh Act claim generally accrues on the date the allegedly wrongful act

takes place." *Renteria v. City of Maywood*, No. CV 09-4639, 2009 U.S.

Dist. LEXIS 98981, at *7 (C.D. Cal. Oct. 9, 2009).

PAPCO filed the original complaint on October 26, 2021. ECF No. 1.

Therefore, the two-year statute of limitations bars any claims based on

alleged acts of discrimination that occurred before October 26, 2019.

PAPCO alleges that GM terminated the ADI Agreement on May 17, 2019.

The last alleged interaction PAPCO describes in the FAC occurred on July

2, 2019, when Duff informed Baron that she was going to submit an

application to purchase PAPCO with a new partner and Baron refused her

proposal. FAC ¶ 52. There are no allegations of wrongdoing after July 2,

2019.

PAPCO responds that it did not suffer damages until it was forced to

sell its assets, which occurred in November 2019. The "accrual of a cause

of action sets the date as the time, when, under the substantive law, the

wrongful act is done, or the wrongful result occurs, and the consequent

liability arises. In other words, it sets the date as the time when the cause

of action is complete with all of its elements." *Gilley v. JPMorgan Chase*

*Bank, N.A.*, No. 12-cv-1774, 2012 U.S. Dist. LEXIS 189888 (S.D. Cal. Oct.

12, 2012) (citing *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397, 981 P.2d 79

(1999) (accrual for an Unruh Act violation beings the date and time when all

of the elements of the cause of action have occurred). It is not the last incident of damage that sets the accrual date, but the first. *See Vaca v. Wachovia Mortg. Corp.*, 198 Cal. App. 4th 737, 745 (2011) (citation omitted) ("It is not material that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date[.]"); *accord Berrios v. Miles, Inc.*, 226 Mich. App. 470, 479 (1997) (citing *Connelly v. Paul Ruddy's Equipment*, 388 Mich. 146, 151 (1972).

As the last date of discrimination alleged occurred on July 2, 2019, the injury was the denial of Duff's request to increase her ownership. PAPCO's theory that it can extend the accrual date by 5 months, because greater damages were incurred in November is contrary to both California and Michigan law. PAPCO's discrimination claim under the Unruh Act is time barred.

For the reasons set forth, defendant's motion to dismiss plaintiff's Unruh Act claim is granted.

## CONCLUSION

Now, therefore, for the reasons stated in this opinion and order,

IT IS HEREBY ORDERED that defendant's motion to dismiss (ECF

No. 18) is GRANTED.

It is so ordered.

Dated:  April 13, 2023

> s/George Caram Steeh
> GEORGE CARAM STEEH
> UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 13, 2023, by electronic and/or ordinary mail.

s/Michael Lang
Deputy Clerk